NEW-YORK,
May, 1834.

Crary
v.
Sprague.

CRARY *vs.* SPRAGUE & CRAW.

Where a sale of property under an execution is brought about by the defend-
ant, in concert with others, with the avowed object of defeating the interest
of a third person in such property, such sale will be deemed fraudulent and
void, although the execution be issued on a valid and unsatisfied judgment.

On a question of fraud in the sale of property, the *declarations* as well as the
doings of the actors in the transaction, are competent evidence : the *declara-
tions* give a character to the *acts.*

A *plaintiff,* on the *second trial* of a cause, cannot give proof of the testimony
of a *deceased witness,* who, on the former trial, was called by the *defendant,*
and on his cross-examination gave evidence beneficial to the plaintiff, where
the defendant shows that such witness, at the time of testifying, was *inte-
rested in the event of the cause* on the side of the plaintiff.

Whether the *defendant* would be allowed to object to such testimony on ac-
count of the *interest* of the witness, where on the former trial the witness
was called by the *plaintiff,* and where, on such objection being made, he
might have been rendered competent by a release, *quere.*

A new trial will not be granted on the ground of the admission of improper
evidence on the trial, unless there be probable grounds to believe that injus-
tice has been done by the admission of such testimony.

THIS was an action of *trover*, tried at the Washington cir-
cuit in November, 1831, before the Hon. ESEK COWEN, one of
the circuit judges.

The plaintiff held a bill of sale of a large quantity of hides
and skins in the vat, in a tannery occupied by John L. Shear-
er and Lewis Shearer, and also of machinery appertaining to
the tannery, and of other property, executed to him by the
Shearers on the 12th August, 1826, to secure the payment of
$1200 due to him : the Shearers to work the hides and skins
into leather for the benefit of the plaintiff. In February,
1827, the plaintiff made an advance to the Shearers of $400
for the purchase of hides, only $200 of which, however, it
seems, reached the tannery. At the time of the making of
the bill of sale, there was an execution in the hands of a de-
puty of the sheriff of the county of Washington, in favor of the
Bank of Troy, against the two Shearers, Hosea Adams and
Lewis Manning for $188,23, with interest from May 5th,

1826, returnable at the August term following. On the 18th November 1826, the plaintiff paid $90 on the execution, which was endorsed. In the beginning of March, 1827, the property in question was advertised to be sold, but the sale was postponed at the request of the plaintiff, who said he would pay the execution, but wanted time to enable him to obtain an assignment of the judgment. About this time a conspiracy seems to have been formed between John L. Shearer, Hosea Adams and one John M'Gregory, to deprive the plaintiff of his claim upon the property by virtue of the bill of sale. On the 7th of April, 1827, the whole of the property was sold by the deputy under the execution in favor of the Bank of Troy, and purchased by M'Gregory for $118,41, who, upon the suggestion of Hosea Adams, had obtained the money to make the purchase from *David Adams,* a son of Hosea Adams. On the 18th June, 1827, *M'Gregory* confessed a judgment in favor of David Adams for $122,44 damages and costs, and David Adams, *at the request of M'Gregory, assigned the judgment to Sprague,* one of the defendants in this cause, and an execution was forthwith issued by the consent of M'Gregory. At the same time a judgment in favor of the Washington and Warren Bank against M'Gregory and Hosea Adams, as endorsers of John L. Shearer, was *also assigned to Sprague,* the amount due on which was $131,52 for which also an execution issued, and was delivered to the same deputy on the 19th June ; which executions were levied upon the property purchased by M'Gregory under the execution in favor of the Bank of Troy, and which property still continuing in the possession of the Shearers. was sold by virtue of such executions on the 30th June, 1827. M'Gregory himself proved that he urged on the second sale ; and he also testified that he had understood that *Crary,* the plaintiff in this cause, had a bill of sale of the property, but he knew that the execution in favor of the Bank of Troy was an older lien, and he intended to avail himself of that execution and defeat the bill of sale, his object being to secure the debt due to the Washington and Warren Bank. The value of the property sold at the second sale, according to a valuation made at the time, was $771,50. To prove the combination, evidence of acts and *declarations* of

*M'Gregory* and *John L. Shearer*, previous to the second levy was received by the judge, though objected to by the defendants. The plaintiff also was permitted to give evidence of the testimony of John L. Shearer upon a former trial of this cause, tending to prove the combination, it being shown that since that trial he had died, notwithstanding that the defendants offered to prove that John L. Shearer was, at the time of his testifying, interested in the event of the cause, and that his interest was on the side of the plaintiff: the judge ruling that inasmuch as John L. Shearer had been produced as a witness upon that trial *by the defendants,* they were now estopped from objecting to the admissibility of his testimony. The last sale was had under the directions of the defendants in this cause. The judge instructed the jury that, although the plaintiff held his title to the property subject to the lien of the execution in favour of the Bank of Troy, he could not be fraudulently deprived of the right to raise that execution by paying it, nor could his rights be affected by a hurried and fraudulent sale ; and if they believed that such fraud existed, they should find for the plaintiff. And he further instructed them, that if they should find that the $400 advanced by the plaintiff subsequent to the bill of sale, or any part thereof, had been invested in hides after the levy under the execution of the Bank of Troy, it would be their duty to find a verdict for the plaintiff for the value of such investment. The jury found a verdict for the plaintiff for $394,50. The defendants having excepted to the several decisions of the judge upon the questions raised and decided against them, and obtained a bill of exceptions to be duly signed, moved for a new trial.

*C. F. Ingalls,* for the defendants, insisted that proof of the declarations of M'Gregory and John L. Shearer ought not to have been received, and that the evidence of the testimony of John L. Shearer on the former trial, after the offer on the part of the defendants to prove that he was *interested* in the event of the cause was wholly inadmissible. He also insisted that an action of *trover* could not be maintained ; that the execution in favor of the bank of Troy being for a valid debt and an unsatisfied balance, the title to the property passed by the sale

to M'Gregory ; and if there was a conspiracy to defraud the plaintiff in this cause, an *action on the case* was the appropriate remedy of the plaintiff.

*S. Stevens*, for the plaintiff.

*By the Court*, NELSON, J.   The admissions of M'Gregory and Shearer, as proved on the trial, were clearly competent evidence as part of the *res gesta* constituting one of the principal points litigated between the parties.   The property taken and sold upon the execution against M'Gregory and Adams was not found in the possession of either of them, but of the Shearers ; and it became necessary, therefore, for the defendants to prove title to the property in themselves, or in one of them.   To show property in M'Gregory, a sale, under the Troy Bank execution, at which M'Gregory was the purchaser, was attempted, and must be sustained or the defendants must fail. What was necessary to be proved by one party might be disproved by the other.   M'Gregory and John L. Shearer were the principal actors in the transaction relative to the Troy Bank execution, as is abundantly proved by Lewis Shearer. Their acts, and of course their declarations at the time while engaged in bringing about the sale and accomplishing the avowed object of it, were undeniably competent and pertinent. It is conceded their *acts* were so, and that their declarations, to the extent claimed and proved, were admissible, stands upon as clear and well settled a principle of evidence.   They were a constituent part of, and gave character to the transaction or sale.   1 Phil. Ev. 202.   1 Starkie, 39, 47.

If the testimony of John L. Shearer on the former trial had been used by the plaintiff, and the objection to its competency on the score of the interest of the witness had been made by the defendants, now for the first time there would be some plausibility, if not force, in the argument, that had it been made before, the witness might have been released ; now it is too late.   Even under this view of the question, I will not say it would be decisive ; for the evidence of the former testimony is admitted only from necessity, and is justly liable to many exceptions ; and it seems even still to be questioned by high

authority if it be admissible at all in a criminal cause, 2 Hawk.
606, § 12, Peake's Ev. 60, though I think it would. Eminent
judges have cast a doubt over the soundness of the rule, and
Lord Kenyon confined its operation to an almost impractica-
ble strictness, evidently from the danger of its great facility
to abuse. 1 Phil. Ev. 199, 200, Gould's ed. 2 Johns. Rep.
21, per Livingston, J. 14 Mass. R. 234. 6 Cowen, 162. It
will not be allowed, unless the witness be dead and his death
affirmatively shown. Even diligent inquiry, without being
able to find the witness, is not sufficient, though it is obvious
there can scarcely be a shade of difference between the two
cases, (death and absence,) either in principle or hardship. I
mention these circumstances to show the great strictness with
which the rule is guarded by the courts. But the argument
against permitting proof of the interest of the witness, where
the same party who introduced him on the former trial offers
his testimony, after his decease, in the same cause, does not
apply to this case. This is the first time the *plaintiff* has
sought to use the testimony of this witness; and I am unable
to discover any reason why his adversaries shall not be per-
mitted to take every legal exception to it that they might have
taken had he been living and before the court. It cannot be
said that the plaintiff would have *offered* ~~improved~~ him on the former
trial, if the defendants had not; and then, if objected to, he
could have been released; for we cannot now take his asser-
tion, when it is his interest to make it, and we are not at liber-
ty, in the absence of proof, to presume that the plaintiff would
have called the witness; and more especially, we cannot pre-
sume that he would have submitted to the sacrifice of making
him a competent witness by release. The case assumes that
he was interested in the event of the suit.

The admission of the testimony at the circuit was put on
the ground that the defendants, by introducing the witness
on the former trial, had declared his competency and credibil-
ity, and thereby precluded themselves from questioning either.
This was undoubtedly true, so far as that trial was concerned,
1 Phil, Ev. 213, but no farther. Independently of that trial,
Shearer was not the witness of the defendants, unless they
again chose to make him such. Had he been living and

been introduced by the plaintiff on the second trial, it could not for a moment be contended that the defendants were not at liberty to take any exceptions to his testimony; and yet the argument would seem to be pushed to this extent. I am aware a distinction is taken between a living witness and the testimony of one deceased; but I have already endeavored to give the answer to it in this particular case. The position of a cause at the circuit sometimes makes it expedient, in a choice of evils for a party, to risque the testimony of a witness interested against him, and as to that trial he must abide the consequences; but if the experiment has proved that the choice was an unwise one, it would be a hard measure of justice to say the witness should ever after be not only a competent but a credible witness in the cause for his adversary, whether dead or alive. The decease of Shearer may be a misfortune to the plaintiff, but that is no reason for throwing that misfortune on the defendants; nor is the fact that the plaintiff has once had the benefit of the testimony of an interested witness, a reason why it should be repeated. There is no force in the position that a party who has used a witness interested against him should afterwards, on a second trial, be estopped from excepting to him on the ground that he is practicing a fraud upon the court. The rule of evidence here alluded to has no application to the case. 1 Phil. Ev. 213. It would be somewhat difficult to make fraud out of the act of a party in calling a witness, on a trial, interested against him.

The judge erred in admitting the testimony of J. L. Shearer; but, notwithstanding, I am of opinion there ought not to be a new trial, and that the jury were bound to render their verdict for the plaintiff independently of that testimony, on the ground that the first sale was fraudulent and void. The evidence of Lewis Shearer, Noble and Maxwell, proved every fact contained in the statement of John L. Shearer, and much more fully and explicitly than was testified to by him, according to the account given of his testimony. The manner of selling the property, and the circumstances under which it was sold by the deputy sheriff, were highly exceptionable; and if supported, would result in an enormous sacrifice. Pro-

perty, to the amount of near $800, was sold for $118—a strong circumstance that all was not fair, especially when there is no satisfactory evidence that the plaintiffs in the execution were pressing, and the plaintiff in this cause, besides, had passed his word that it should be paid.

Laying entirely out of view the testimony of John L. Shearer, it is impossible, upon the whole case, to doubt that here was a deliberate and fraudulent combination between the parties to the first sale to defraud the plaintiff in this cause; and it would be discreditable to the administration of justice, to give countenance to such a perversion of the judgment and process of the court.

The defendants are not entitled to any peculiar protection or favor, as they cannot be deemed *bona fide* purchasers. They were fully advised of the claims of the plaintiff, and were obliged to indemnify the sheriff before he would hazard a sale. Under the circumstances of the case, in contemplation of law, they stand in no better situation than M'Gregory, being chargeable with notice of his fraud, and having chosen to take the risque of it.

The following are authorities for denying a new trial, notwithstanding the error of the judge. To induce the granting of a new trial, there should be strong probable grounds to believe that the merits have not been fully and fairly tried, and that injustice has been done. 3 Johns. R. 532, 3. 2 Caines' R. 90. 5 Johns. Rep. 138. 8 Wendell, 673. 2 T. R. 4. 1 Bos. & Pul. 339. 1 Taunton, 12. No such grounds exist in this case.

New trial denied.