## MERRILL & a. *v.* GOULD & a.

Upon a plea of disclaimer, evidence that the defendant remained in possession after the levy of the executions of the plaintiffs, is sufficient to authorize a verdict for them.

A co-defendant against whom such issue is found and who remains in possession, is not a competent witness for the co-defendant who pleads the general issue.

The acts and declarations of one in possession of land are evidence for the plaintiff against one claiming it by a regular conveyance from a third party, after evidence showing that the party in possession bargained and partly paid for the land, and that the conveyance was in trust for his benefit and to defeat his creditors, both parties consenting to the design.

A deed unacknowledged is sufficient as against the parties to it.

WRIT OF ENTRY to recover seizin of a messuage in Gilmanton. The defendant Charles Gould disclaimed, and the plaintiffs replied tendering an issue upon the disclaimer, which was joined. The defendant William Gould pleaded severally the general issue.

Upon the trial of the issue first named, the plaintiffs gave in evidence a judgment in their favor against Charles Gould, recovered at the August term of the Court of Common Pleas in 1839, with an execution issued thereon, and a levy of the same upon part of the premises, completed in January following.

They also offered evidence of a judgment recovered by themselves, Daniel Osgood and Josiah Ladd, in March 1842 against the same party, and a levy of an execution founded thereon immediately afterward upon the remainder of the premises in controversy.

They then proved that said Charles Gould had been in the occupancy of the premises for a long time before and at the time of the several levies; that he refused to surrender the same to the creditors in whose favor the levies had been made; and that he was still in the possession and occupancy of them.

The defendant contended that the evidence was not

sufficient in law to sustain the issue for the plaintiffs; but the court ruled otherwise and a verdict was taken for the plaintiffs to which the defendant excepted.

To sustain the issue with William Gould, the plaintiffs introduced the same copies of judgments, executions, and extents, &c., as in the trial with Charles, and also a deed from said Daniel Osgood and Josiah Ladd to them, quit-claiming and releasing all their right, title and interest, in and to the premises in question. The certificate of acknowledgment being in the following words: to wit,

"State of New-Hampshire, Merrimack ss, January 9, 1843, personally appearing the above named Osgood and Ladd acknowledged the foregoing instrument to be their voluntary act and deed, before me or us.

GEORGE W. NESMITH, Jus. Peace.
GREENLIEF OSGOOD, Jus. Peace.

Jan. 26, 1843."

It was admitted that Daniel Osgood lived in Franklin, and that Ladd lived in Gilmanton, and that the name "Ladd" was in the hand-writing of Greenlief Osgood the magistrate.

To the competency of the deed as evidence the plaintiffs objected, but it was admitted by the court.

In defence William Gould introduced a deed of warrantee from one Allen Hackett, who it was admitted formerly owned the premises, to the said William, conveying to him the whole of the premises in question, dated March 27, 1838, duly executed and recorded, and evidence tending to show that he paid the purchase money to Hackett.

To rebut this evidence the plaintiffs offered evidence tending to prove that the contract with Hackett for the purchase of the premises, was made by Charles in the Fall of 1837; that he superintended and paid for the erection of buildings on the same, that he entered into the premises and has occupied them ever since; and up to the time

Merrill *v.* Gould.

of the levies treated them as his own; and that the premises were paid for in part with his own money and not with the money of William; that the deed was made to William with a fraudulent design to secrete and secure the property of Charles from his creditors; and with other evidence tending to prove this, the plaintiffs proved the declarations of Charles made at sundry times between the time of making the contract with Hackett and the making of the levies, tending to show that he claimed and spoke of the premises as his own; that he paid most of the purchase money, and that there were certain notes against him which he did not intend to pay.

To the admission of these declarations of Charles as evidence the defendant objected, but the court admitted it. Further evidence was offered by the plaintiffs tending to show that William was the brother of Charles and lived in Plymouth, and had never taken any management or control of the premises nor in the erection or repair of buildings thereon.

To rebut and explain this testimony the defendant William offered Charles as a witness. But the plaintiffs objected and the court sustained the objection and rejected the witness.

The jury returned a verdict for the plaintiffs, which the defendant moved to set aside and for a new trial on account of the foregoing rulings of the court, and the admission of improper and insufficient testimony.

*Nesmith*, for the plaintiffs, to the point that the evidence on the plea of disclaimer was sufficient, cited Stearns on Real Actions 194; Jackson 83. That the sayings of Charles Gould were admissible. *George* v. *Sargent*, 12 N. H. 313.

*I. A. Eastman*, for the defendant. The demandant must show the tenant in possession. Stearns on Real

Actions 202, sec. 16; *Higbee* v. *Rice*, 5 Mass. 332. The declarations of Charles Gould were improperly admitted. *Essex Bank* v. *Rix*, 10 N. H. 201.

GILCHRIST, J. The first question which presents itself for consideration is that which arises upon the evidence produced at the trial of the issue made upon the plea of disclaimer, which the court ruled to have been sufficient to authorize the verdict that was found for the plaintiffs, but which the defendant contended was insufficient for that purpose.

The effect of a plea of disclaimer, is a denial on the part of him who pleads it that he is in possession of the premises demanded claiming any such interest therein as renders him a proper party to a writ of entry. If special, it points out the particular interest he actually does claim, and indicates the party under whom he is in possession, so as to give the demandant a better writ; if general, it denies that he has any possession, or that he claims any interest whatever in the land. Such is the character of the plea in the present case, and the issue is whether or not he was in possession claiming title; or, what is the same thing, whether he was in possession at all; for the law does not allow him under a general disclaimer to qualify his possession by referring it to the title of another, still less to denominate his possession a mere trespass; for the demandant may at his election treat such acts as a disseizin for the purposes of his remedy.

Upon this point the evidence is that the demandants and those whose estate they have, having recovered judgments against the defendant who disclaims, sued out executions which they caused to be levied upon the demanded premises while he was in possession, and that he afterward refused to quit and surrender the possession to them, and still retains it.

The levy of the execution gives a seizin to the judg-

ment creditor in whose behalf it is made, and if the debtor afterward remain in possession, it is as clear an act of trespass or disseizin, whichever the creditor elects to consider it, as can be performed. The evidence appears to be full and sufficient to this point. *Wilson* v. *Webster*, 6 N. H. 419; *Walker* v. *Wilson*, 4 do. 217. The exception which was taken to it can not therefore prevail.

Upon the trial of the issue of *nul disseizin*, the defendant party to it offered as a witness Charles Gould, his co-defendant, who had pleaded the disclaimer, and excepted to the ruling of the court, who upon the ground of his having an interest in the event of the issue, refused to permit him to testify.

It is a general rule in actions sounding in contract, that one of several defendants who has been defaulted can not be called as a witness by the parties who plead. The reason is, that any evidence which would prevent a verdict from being rendered against these, would prevent a judgment from being entered against the defaulted party; who has therefore, although he has confessed by his default all that could have been shown by a verdict, still an interest in the cause.

This principle was applied in the case of *George* v. *Sargent*, 12 N. H. 313, which was a real action, to the exclusion of a defendant who had suffered a default, and was called by his co-defendant as a witness. In that case the judgment could not be severed, and if the defendant prevailed upon the issue, no judgment could be rendered against the defaulted party.

In the present case the proposed witness is in possession of the premises using the same as his own; and if the issue tried be found in favor of the defendant pleading *nul disseizin*, no writ of possession can go in favor of the demandant to disturb that possession. On the contrary, if the demandant prevails, he obtains his writ, which enables him to oust the witness. The case is dif-

ferent from *George* v. *Sargent*, but discloses an interest in Charles Gould to the extent of the value of his possession, which is sufficient to disqualify him from testifying in a cause directly involving that possession, whatever its value may be to him. For that reason we think the Court of Common Pleas correctly refused to permit him to testify.

The court permitted the plaintiff to give in evidence at the trial the sayings and declarations of Charles Gould; and it becomes necessary to inquire whether his relations to the parties and to the issue tried, were such as to justify the admission of such evidence.

The tendency of the declarations proved, was to invalidate the paper title to the land in controversy, which was set up by the defendant party to the issue, and cause it to be appropriated to the payment of the debts of the author of those declarations; an object not necessarily presumed to be hostile to his interests or desires; but rather in legal presumption, entirely the reverse. It is needless therefore to remark that the case would be a clear one, were there not other elements that materially qualify it.

The plaintiffs and those under whom they claimed, had levied their executions founded upon judgments which they had obtained against Charles, upon land which had been conveyed by Mr. Hackett to the defendant William. This they might well do if the land had been really bought and paid for by Charles for his own use, notwithstanding the conveyance to another. *Pritchard* v. *Brown*, 4 N. H. 397; *Scoby* v. *Blanchard*, 3 do. 170.

Their object was therefore to show those facts. They therefore produced evidence which tended to show that the bargain for the purchase of the land had been made with Hackett by Charles; that he paid for it in part with his own money; that immediately upon the completion of the purchase he took possession of it; that he improved it by erecting buildings upon it by his own labor and at his own expense; and that he has ever since lived in the

undisturbed enjoyment and occupancy of the land; that the defendant William Gould is his brother; that he lived in Plymouth, which is a distance from the farm and in another county; and that he has never interfered in the management or control of the premises, or in the erection or repair of the buildings. The evidence also tended to show that the design of the two parties in causing the conveyance of the land to be made to William, while the payments were made by Charles, who also occupied and enjoyed the property, was by that means to defeat the creditors of the latter, and to secrete his property from the reach of legal execution.

In this state of the evidence the plaintiffs introduced the declaration of Charles, made by him while in possession of the premises, to the effect that he himself paid most of the purchase money, and that there were certain notes outstanding against him which he did not intend to pay; together with words by which he spoke of the farm as his, and claimed it as his.

The tendency of the evidence, other than that which proceeded from these declarations, was to fix upon the parties the imputation of being combined and associated in the prosecution of a common object. This was the hindrance and delay of the creditors of one of them, by causing property which was really his, to be conveyed to the other in trust for the former to possess and enjoy as his own.

Now when two or more parties are once shown to have consented and combined together for the prosecution of a common object, the acts done by either of them in the prosecution of that object, and proper for its consummation, are justly considered as the acts of all the confederates. Each acts as well for the others as for himself; and the existence of the common purpose accredits each as the representative of all, in whatever he does or says in carrying it into effect; and declarations made by one, contem-

poraneously with any of these acts denoting their character and object, are like the acts themselves considered as proceeding from all the parties to the confederacy, and may be proved against them or any of them.

This rule is applied without reserve in criminal cases even. *Commonwealth* v. *Crowningshield,* 10 Pick. 497.

In civil causes its application has been made where vendors have remained in possession of the land after the conveyance, and their declarations have been received against the purchasers to prove the transaction fraudulent. *Babb* v. *Clemson,* 10 Serg. & Rawle 419; 12 do. 398; 1 Rawle 458.

Where the object of the suit was to invalidate a sheriff's sale of personal property, as having been effected through the unlawful combination of certain persons with parties to the record for purposes of surprise and oppression, the declarations of one not a party to the suit were held admissible on the same ground. *Orary* v. *Sprague,* 12 Wend. 41.

The vendor of personal property retaining possession of it after the sale, his sayings were received in evidence against parties claiming under the sale. *Willies* v. *Farley,* 3 Car. & Payne 395.

So the declarations of co-trespassers are admissible to show a common purpose. *Rex* v. *Inhabitants of Hardwicke,* 11 E. 585.

In this State it has been held that the declarations of one in the open possession of personal property, may be given in evidence to show the character of the possession; that he was the absolute owner of the chattels, and that the formal sale of them to the plaintiff had been made collusively at the request of the declarant and for his own benefit and for the purpose of evading legal executions. This was upon the ground that the defendant's case required him to show that both parties participated in the imputed fraud. *Blake* v. *White,* 13 N. H. 367.

We think that these cases sufficiently establish the

proposition, that upon proper ground being laid for its introduction by some evidence of the combination, the admissions and declarations of Charles Gould accompanying the possession of the property which he occupied in pursuance of the objects of the combination, were proper evidence. They tended to define its purposes by showing among other things that "there were certain notes" which the declarant " did not intend to pay." They confirmed the evidence already in the case, that the conveyance was not made to William for the reason that the land was his, and that the true ownership was denoted by the possession. He claimed the farm as his own, and treated it as such ; and this he did while in possession, and with such unreserve and publicity as to confirm the evidence of his brother's consent ; that possession being also one of the objects intended to be secured by the combination.

It is true that it was not necessary for the plaintiffs' case to prove the fraudulent combination and design of these brothers ; since if William was really the trustee of Charles, and the latter was the purchaser, and caused the conveyance to be made to the other for any purpose however innocent, the land would be liable to execution in behalf of the creditors of the party really in interest. *Pritchard* v. *Brown*, before cited.

But the proof of the fraudulent consent and purpose is material, as it tends to establish the fact of the trust.

When the object of these brothers in taking the conveyance in the name of William, while most of the purchase-money was paid by Charles, who also occupied, improved, and enjoyed the farm, and called it his own, is shown to have been to prevent the property from being taken by the creditors of the latter, then all the inferences ordinarily to be drawn in favor of William from the state of the papers, are repelled, and the presumption arises that he has no interest whatever in the land, but as a mere conduit for the benefit of his brother.

Merrill *v.* Gould.

We think therefore that proof of the consent and design of these parties was relevant to the issue, and that the declarations of Charles claiming the property as his, that he paid most of the purchase-money, and that there were certain notes outstanding against him which he did not intend to pay, were, upon the proper ground for its introduction first being laid, competent evidence to prove such consent and design.

The exception taken to the certificate of the acknowledgment of Osgood and Ladd's deed, must be overruled upon the sole ground that no acknowledgment was necessary to give effect to the deed sufficient for the purpose for which it was used.   There must therefore be

*Judgment on the verdict.*