## George *v.* Fisk & Norcross.

Where the defendants put a large quantity of logs upon the ice of a river, and on the breaking up of the ice a dam was formed by the logs and ice, and a channel cut through the plaintiff's land, and logs were carried upon the land, and it appeared that the defendants used no care in regard to the logs after they were put upon the ice — *held,* that the evidence was competent to show negligence, and that an action could be maintained for the damage.

A tenant and landlord may both maintain actions at the same time for injuries done to an estate : the tenant, for the interruption of his possession and the diminution of his profits ; and the landlord, for the more permanent injury to his property.

In a suit by a landlord, not in possession, for damages done to his estate, the declaration should give a correct description of his title, and the injury received, and his interest in the property should be stated according to the facts.

Where the plaintiff was in possession of land, under a bond, conditioned that if he supported certain persons during life he should receive a deed of the premises, and it appeared that he had so far kept the condition — *held,* that he had an interest in the land to the extent of a freehold, and that, under a declaration alleging that he was seized of the premises, he could recover for injuries done to his possession.

George v. Fisk & Norcross.

Where a deposition was taken by one party on notice, and both parties examined the witness at the caption, but the deposition had not been used upon trial, and the witness died — *held*, that the adverse party was not entitled to use the deposition against the will of the party taking it.

CASE, brought to recover damages of the defendants as partners, under the firm of Fisk & Norcross, for causing the obstruction of the Pemigewasset river, by means of logs placed therein, whereby the plaintiff's land was flowed and injured.

The declaration contained four counts, the first of which was as follows :

" In a plea of the case for that the plaintiff, on the first day of February, A. D. 1850, at Woodstock aforesaid, was, and ever since has been, seized of a tract of land in said Woodstock, and bounded on the north by land of Charles Fifield, east by land of David Woodbury, south by land of David Woodbury, Jr., and west by Pemigewasset river, containing fifty acres, more or less. And the defendants, not ignorant thereof, then and there did wrongfully cause to be placed in said river, above said tract of land, large quantities of logs, timber and trees, to wit, ten thousand logs, trees and lumber, containing one million feet, and did wrongfully and negligently permit the same to accumulate, obstruct and dam up said river below and near the plaintiff's said land, and opposite to the same, and did neglect properly to direct, drive and float said logs, trees and lumber, so as to keep them clear of said land, whereby said river became, and was, in consequence of defendant's said negligence, greatly dammed up ; and the plaintiff's said land was overflowed and drowned thereby, and said logs were thus negligently and wrongfully permitted by defendants to float upon said land, and the same then and there, by the force and pressure of said stream, and by the logs, trees and timber aforesaid, did wash away and gully out and subvert the soil, and injure and destroy the plaintiff's grass, then and there growing, and did otherwise greatly damage said land, and lessen it in value."

The other counts were substantially the same as the first, alleging the injuries to have been caused in February, 1851, 1852 and 1853.

The defendants pleaded the general issue, and the plaintiff offered evidence tending to show that in February, 1850, in consequence of a freshet, the river broke up, the ice being from one to two feet in thickness, and a dam was formed across the river a short distance below the plaintiff's land, by logs, ice and snow intermixed, by reason of which the plaintiff's land was overflowed, and the current of the river directed across it, in which passed other logs, ice and snow, whereby a channel from two to four feet deep was made in the soil of the plaintiff's land, and logs and ice floated and lodged in various places upon his meadow.

It appeared that the plaintiff was in possession, and that the logs belonged to the defendants, who were engaged in the lumbering business upon said river ; and there was evidence tending to prove that there was in all three hundred thousand feet of timber that came down the river at this time with the ice, and was stopped in the river, and was lodged on the lands adjoining, as above stated.

It appeared also that neither the defendants, or any of their servants or agents, followed these logs, or were present at the time of the formation of this dam, or did any thing to prevent the same, but there was no other evidence of negligence offered, and the plaintiff rested his cause.

The defendants then moved for a nonsuit, on the ground that there was no competent evidence of negligence, or want of due care in the defendants, but the court overruled the motion, to which the defendants excepted, and the trial proceeded.

It appeared that the title to the land was in the town of Woodstock, and that on the eighteenth day of April, 1849, a bond was executed by the selectmen of Woodstock, in the name of the town, for which they were authorized by vote of the town, and the same was duly delivered to the plaintiff, and was as follows :

" Know all men by these presents, That the town of Woodstock, in the county of Grafton and State of New-Hampshire, is held and firmly bound to Samuel George, Jr., of Woodstock,

in said county of Grafton, in the sum of one thousand dollars, to be paid to the said Samuel George, Jr., or his certain attorney, executors, administrators or assigns, to which payment, well and truly to be made, we, as selectmen, hereby bind said town of Woodstock, firmly by these presents, sealed with our seals, and dated at Woodstock, this eighteenth day of April, in the year eighteen hundred and forty-nine. The condition of the above obligation is such, that if the said Samuel George, Jr., his heirs or assigns, shall support and maintain Samuel George, Huldah George, wife of the said Samuel, and Sarah George, mother of the said Samuel George, furnishing them with good and sufficient clothing, lodging, victuals, drinks, doctoring and nursing, at the dwelling-house of the said Samuel George, in Woodstock, keeping the said Samuel George, Huldah George and Sarah George, free and clear from all trouble, cost or expense to the said town of Woodstock, during their natural lives, the said Samuel George, Jr. is to have the use and profit of the Samuel George farm, so called, belonging to the said town of Woodstock, so long as he shall so support and maintain the said Samuel, Huldah and Sarah George, being father, mother and grandmother of the said Samuel George, Jr.; the said Samuel George, Jr., to have the privilege of managing and cultivating said farm without waste or detriment, and keeping said farm and buildings in good repair; and if the said Samuel George, Jr. shall perform and fulfill all his part in the conditions, then the town of Woodstock, by their agent, shall and will give said Samuel George, Jr., or his heirs or assigns, a good and sufficient quitclaim deed of the above mentioned farm, then this obligation to be void, otherwise in full force.

> GEORGE F. WELLS, [L. S.]
> BENJAMIN FOX, [L. S.]
> WILLIAM H. GORDON, [L. S.]
> *Selectmen of Woodstock.*"

" Signed, sealed and delivered in presence of John Clough, Thomas H. Gordon."

It also appeared that the plaintiff had entered on the land

under this bond, and ever since occupied it; that he had maintained the persons named in the condition, ever since up to the present time, except Samuel George, who died in the fall of 1854, but was maintained by the plaintiff until his death, the others being still living and maintained by the plaintiff; and the defendants contended that upon this declaration and on this proof of title, the plaintiff could not maintain his action; but the court charged the jury that he might so maintain his action, to which the defendants excepted.

In the course of the trial the defendants offered to read the testimony of Samuel George, now deceased, given in the form of a deposition, taken in this cause by the plaintiff, on notice to defendants and their appearance, which deposition contained the testimony of the deceased witness on the examination of both parties; but the court rejected the evidence, to which the defendants excepted.

The court charged the jury, that if the defendants put their logs upon the ice, in the river above the plaintiff's land, without being rafted or secured, so that on the breaking up of the ice in a thaw, producing a freshet, which was not unusual, they were thrown upon the plaintiff's land, or contributed to the formation of a dam, by which the current was turned across his land, and the land injured thereby, the defendants were liable.

The court proceeded to say:

"If the injury or any part of it was caused by the want of due care of the defendants in managing and controlling their logs, there being in the river, so far are the defendants liable.

And the question for you to decide is, whether the defendants did manage their logs in a reasonable and proper manner; whether they exercised due care and diligence in preventing them in times of a freshet from doing injury to others' land.

If you are of opinion that the defendants did not exercise proper care and diligence in the management of their logs, then did these logs form the dam or jam, or essentially contribute and conduce thereto? If the jam was formed wholly by the ice, and

George v. Fisk & Norcross.

would have happened independently of the logs, and thereby have occasioned the same injury, then the defendants are not liable.

But if the jam was formed wholly by the ice, yet if the damage was caused by the logs being thrown on to the plaintiff's land, by force of this flowage of water so caused, and by the logs ploughing up and subverting the soil, and if you find that the defendants did not exercise due care in managing and driving or securing said logs, then the defendants would be liable;" to which, also, the defendants excepted.

The court also charged the jury, that the plaintiff stood in the situation of a party, having made a contract for the purchase of the land, and paid part of the price ; and that he had virtually a lease of the land, so long as he should support his parents and grand-parent ; and if they found for the plaintiff they should give him damages commensurate with the injury which he had sustained in his estate ; although for the permanent injury to the soil the town of Woodstock was alone entitled to recover.

They also instructed the jury, that the plaintiff might abandon the premises at any time, and cease the support of said persons, with no other consequences than a loss of the premises.

The defendants thereupon requested the court to charge the jury, that if the plaintiff is entitled to recover any thing, it can be only nominal damages.

Also requested the court to charge the jury, that under this declaration the plaintiff can recover nothing more than the damages to the grass crop of that year, together with damages for the interruption of passage over the land.

But the court declined to charge according to either of said requests.

But thereupon the court instructed the jury to find such damages as the plaintiff had suffered, according to the title he had proved ; and that the town of Woodstock could, immediately after the accident, have brought their action and recovered the damages of a permanent character, which had happened to the land.

To all of which rulings and instructions, and the declining of the court to rule as requested, the defendants excepted.

The jury returned a verdict for the plaintiff for $250 damages ; and the defendants moved for a new trial upon all the foregoing grounds, and because the damages were excessive.

Upon the subject of the damages, the evidence tended to prove that the plaintiff's land, covered with water, that is, chiefly covered, was a tract of about fifteen and one half acres, under cultivation as mowing, lying in Woodstock, and bounded on the west by the Pemigewasset river, and on the east by a creek or moat, which emptied into the river below the plaintiff's land, and which in high water communicated with the river at the upper end. That the land was low, and covered mostly with water, as often as once a year, the bank of the river at the upper edge of the break being eighteen inches above the water, at an ordinary stage in the month of May. That the channel washed or gullied through the plaintiff's land was in length about thirty-three rods, and wide enough to make in all about two and one eighth acres, and gullied to the depth of from two to four feet. That a considerable quantity of logs were left on various parts of the land, besides those left in the channel, which remained until some time in the month of April, of the same year, when they were removed by the defendants.

No evidence was offered as to any injury to the land, except what is above stated, except that the jury had a view of the land, and the agents of both parties drew the attention of the jury to the sand, which had been washed upon the land in various places by high water.

*Leverett, Bellows* and *Quincy*, for the defendants.

I. The motion for a nonsuit should have been granted. The evidence did not tend to show any fault or negligence on the part of the defendants.

Nothing more was shown than that the river broke up in a freshet, in the month of February, 1850, and brought down a large quantity of the defendants' logs. There was no evidence

of negligence in subjecting the logs to the action of the river, or in not conducting them after the river broke up.

In the case of the collision of ships at sea, in a storm, negligence might as well be presumed as in this case. After the breaking up of ice of this thickness in a freshet, nothing could have been done to control it.

II. The testimony of the deceased witness, Samuel George, ought to have been received.

It was taken in the same cause, on the examination of both parties, and upon oath. 1 Greenl., § 163, and cases cited; *Young* v. *Dearborn*, 2 Foster 372. It is sufficient if it was, or might have been, taken under the examination of both parties. *Cazneau* v. *Vaughan*, 1 Maule & S. 4; *Gass* v. *Stinson*, 3 Sumner 99, 105.

The test seems to be the examination, or the opportunity of an examination, by both parties, and that existed in this case. And it is believed that no case can be found where the testimony is excluded upon the ground that the party against whom it is now offered, having himself introduced the witness at the former trial, had no opportunity to cross-examine him. On the contrary, the case of *Crary* v. *Sprague*, 12 Wend. 41, where the plaintiff offered to introduce the testimony of a deceased witness of defendant, goes upon the opposite ground. See, also, 1 Greenl. Ev., § 322; *Williams* v. *Williams*, 3 Maule & S. 497; *Commonwealth* v. *Richard*, 18 Pick. 434; 2 Lilly's Abr. 745; *Jackson* v. *Lawson*, 15 Johns. 543. Nor is it necessary that the testimony should have been given in a court of record, nor at what is technically a previous trial. 2 Cowen & Ph. Evid., note 437, p. 571; 1 Stark. Evid. 269, and cases cited; *Jackson* v. *Bailey*, 2 Johns. 18; *Rex* v. *Barbour*, 1 Root 76; *Commonwealth* v. *Richards*, 18 Pick. 434.

III. The instructions as to the damage were wrong, and the jury should have been instructed as requested by defendants' counsel. As it was left to the jury, they were at liberty to award damages for the injury to crops, &c., forever; so long as they might suppose his interest would be likely to continue.

This was wrong; damages should not have been given for the injury to crops, &c. beyond the year. But they were misled, and must have gone beyond it, as appears from the fact that only 2⅛ acres were gullied out, and the verdict was $250.

No legal interest passed by the bond. It is not a lease, and deprived the town of Woodstock of no legal remedies it was entitled to for injuries to the land. Nor should it, for the plaintiff had acquired no title to the land, and was under no obligation to complete the purchase.

Had the town of Woodstock brought suit and recovered for permanent injury to the soil, it would have held the amount recovered in trust for the plaintiff, had he elected to complete the purchase. In this way ample justice would have been done; but on the instructions given the defendants would be charged twice. Both the tenant and the reversioner may sue; one for the injury to his possession, and the other for the destruction of the land, and the recovery by one would be no bar to the other. 1 Chit. Pl. 63, and note *y;* 2 Greenl. Ev. 469, and cases cited; *Jesser* v. *Gifford,* 4 Burr. 2141; *Davis* v. *Jewett,* 13 N. H. R. 91; 1 Saunders' Rep. 322; *Baker* v. *Sanderson,* 3 Pick. 352; *Sumner* v. *Tileston,* 7 Pick. 198; *Starr* v. *Jackson,* 11 Mass. 519, 521, 522; Viner's Abr., Trespass, 2, 3, 4; Comyn's Dig., Trespass, B, 2.

In case of a bond conditioned to convey on payment of the price, and the obligee to have possession in the meantime, it will be regarded as a license, or an estate at will. *Hiatt & al.* v. *Miller,* 5 C. & P. 595; *Proprietors of No. 6* v. *McFarland,* 12 Mass. 324; *Hanchett* v. *Whitney,* 2 Aiken 240; Taylor's Landlord & Tenant, § 60; 1 Greenl. Cruise Dig., Tit. 9, Ch. 1, § 8; *Jackson* v. *Bryant,* 1 Johns. 326; *Jackson* v. *Rowan,* 9 Johns. 330; *Clough* v. *Hosford,* 6 N. H. R. 231; *Love* v. *Edmondstone,* 1 Iredell 152; *Fowke* v. *Beck,* 1 Spears 291; *Jones* v. *Jones,* 2 Richardson 542; *Jackson* v. *Hughes,* 1 Blackford 421; *Doolittle* v. *Eddy,* 7 Barbour 74.

IV. The charge of the judge that placing the logs on the river, without being rafted or secured, was negligence which would charge the defendants, is wrong, we think.

The other part of the instructions, as to want of due care, applies to the management of the logs after being afloat.

V. The damages were excessive, and could not have been reasonable for injury to the crop.

*Bryant*, for the plaintiff.

1. Possession of land without title or color of title, is sufficient evidence of seizin against every one who can show no better title. *Lund* v. *Parker*, 3 N. H. 49. Seizin is only possession. *Frost* v. *Cloutman & ux.*, 7 N. H. 9.

2. The court were fully sustained by authority in instructing the jury that the plaintiff stood in the situation of a party having made a contract for the purchase, and paid part of the price, and that he had a virtual lease of the land so long as he fulfilled the conditions of the bond. The bond itself shows this. Greenl. Cruise on Real Property, Title, Trust, Ch. 1, § 41.

3. The rule of damages was also correct. It was to be " commensurate with the injury which he had sustained in his estate." At the same time a full explanation was given as to the nature of that estate, and the extent of interest held by the town in the land. Under such instructions it was wholly within the province of the jury to say what the damage really was. *Dennison* v. *Hyde*, 6 Com. 508 ; *Allen* v. *Craig*, 1 Greene 294.

In *Schuylkill Nav. Co.* v. *Farr*, 4 Serg & Watts 362, it is laid down that the measure of damages occasioned by backing water on land, is the difference between what the property would have sold for as affected by the injury, and what it would have brought unaffected.

Where an injury has been sustained for which the law gives a remedy, that remedy shall be commensurate with the injury. *Rockwood* v. *Allen*, 7 Mass. 254 ; *Swift* v. *Barnes*, 16 Pick. 194; *Bussy* v. *Donaldson*, 4 Dall. 206; *Leland* v. *Stone*, 10 Mass. 459.

4. The copy of S. George's deposition was properly rejected. We find no case where the doctrine is laid down that a party under such circumstances would be entitled to use it.

The rule recognized by the authorities is based upon the right of cross-examination, by the party against whom the deposition is sought to be used. No such right or privilege existed in this case. 1 Greenleaf's Evidence 589, 590.

EASTMAN, J. Taking the order in which the questions in this case are raised, and the first one presented arises upon the ruling of the court in denying the motion for a nonsuit.

The plaintiff had declared that he was seized of a tract of land in Woodstock, and that the defendants, not ignorant thereof, had caused to be placed in the Pemigewasset river, large quantities of logs, timber and trees, and wrongfully and negligently permitted the same to accumulate, obstruct and dam up the river before and near the plaintiff's land, and opposite to the same, and neglected properly to direct, drive and float the logs and timber so as to keep them clear of the plaintiff's land, whereby the river became, and was in consequence of the defendant's negligence, greatly dammed up, and the plaintiff's land was overflowed and drowned thereby ; and the logs were thus negligently and wrongfully permitted by the defendants to float upon the land, and the soil was washed and subverted, and the grass injured and destroyed, and the land was otherwise damaged and lessened in value.

The case then finds the plaintiff's evidence to be as follows : That in February, 1850, in consequence of a freshet, the river broke up, the ice being from one to two feet in thickness, and a dam was formed across the river a short distance below the plaintiff's land, by logs, ice and snow intermixed ; by reason of which the plaintiff's land was overflowed, and the current of the river directed across it, in which passed other logs, ice and snow, whereby a channel from two to four feet deep was made in the soil of the plaintiff's land, and logs and ice floated and lodged in various places upon his meadow.

That the plaintiff was in possession, and that the logs belonged to the defendants, who were engaged in the lumbering business upon said river, and that there were in all three hundred thousand

feet of timber that came down the river at this time with the ice, and was stopped in the river, and was lodged on the lands adjoining, as above stated.

Also, that neither the defendants or any of their servants or agents, followed these logs, or were present at the time of the formation of this dam, or did any thing to prevent the same, but there was no other evidence of negligence offered.

Upon this evidence the defendants moved for a nonsuit, on the ground that there was no competent evidence of negligence, or want of due care in the defendants; but the court overruled the motion and the defendants excepted.

The defendants placed their motion upon one ground only; that of want of competent evidence to show want of due care or negligence on their part.

Assuming that the defendants had the right to float and drive their logs down this stream, they had, nevertheless, a duty to perform in bestowing upon them proper attention. The right to use the river as a highway in which to transport their lumber, gave them no power to use it in a negligent manner, or carelessly to overflow the farms adjacent. When they put their logs upon the ice, or into the water of the river, it was their duty to see to it that they were transported in such a way as not to injure others. We might, perhaps, go farther, and say that even if the defendants had done all they could to prevent the injury, the law would presume negligence, for the defendants had no right to use the river to the injury of adjacent owners.

These logs belonged to the defendants. Three hundred thousand feet of them came down the river at the time complained of, without the defendants or any of their servants being present, to take charge of them, or to prevent any damage that they might do. The dam was formed by the ice, logs and snow, and the injury was done to the plaintiff's land. Now how much of the damage was caused by the defendants' lumber and logs, was not at this time the question; but the only point then presented to the court was, whether there was *any* evidence competent to show negligence or fault on the part of the defendants. And in

regard to this we have no doubt. A statement of the position of the parties and their rights, coupled with the circumstances connected with the injury, satisfies us that the ruling of the court in denying the motion for a nonsuit was correct.

The next question is, whether the action can be maintained upon the plaintiff's declaration. This question, as well as the others presented in the case, is not so clear as the first, but upon the whole we think the verdict may be sustained.

The plaintiff was in possession of the land under a bond for a deed from the town of Woodstock. By this bond the town, who owned the land, agreed that they would convey the premises to the plaintiff, on condition that he should support his father, mother, and grandmother during their natural lives; and they further agreed that he should have the use and profit of the farm so long as he should render the support to the individuals named; and that he should have the privilege of managing and cultivating it without waste or detriment, &c. So long, then, as the plaintiff performed the conditions of the bond, he was entitled to the possession, free use, profit and income of the farm, and was also acquiring an interest in the land itself beyond that of a mere tenant, which would eventually, provided he continued to fulfill the conditions of the bond, give him a title to the place. See *Pritchard* v. *Brown,* 4 N. H. 397; *Edgerly* v. *Sanborn,* 6 N. H. 397. In the latter case it was held that he who is in possession of land under a bond for a deed, and has paid part of the consideration, has such an interest in the land as may be taken by extent.

The plaintiff, at the time the damage complained of was done, had performed a part of the consideration of the bond, and up to the time of the trial of the cause had supported the individuals according to the condition of the same. His father, however, had in the meantime deceased; an event which made the conditions less onerous, and which would add to the inducement to complete all the requirements of the bond.

The defendants contended that upon this proof of title the action could not be maintained upon the present declaration.

The plaintiff alleges that he was seized of the premises, and that the defendants, not ignorant of the fact, committed the grievances complained of, whereby the soil was subverted, the grass then and there growing destroyed, and the land otherwise greatly injured and lessened in value. No specific title to the land is alleged, nor was it necessary that there should be, as mere possession is sufficient to maintain an action against a wrong doer. But the plaintiff can recover for nothing beyond what his right and interest shown will entitle him to.

It is well settled that both the tenant and landlord may maintain actions for injuries done to the soil, or buildings upon it. They are both injured, but in different degrees; the tenant in the interruption to his estate and the diminution of his profits, and the landlord in the more permanent injury to his property. Both may have separate actions for their several damages, and a recovery is to be had according to their respective interests. Rolles' Abr., Trespass, N. 3, 4, 5, 67; 1 Saund. 322, note 3; Vin. Abr., Trespass, 3, 4; Co. Litt. 57, *a*, note 2; 2 Chitty's Pl. 386; 2 Greenl. Ev., § 469; *Starr & al.* v. *Jackson,* 11 Mass. 519; *Baker* v. *Saunderson,* 3 Pick. 348; *Davis* v. *Jewett,* 13 N. H. 88; *Plumer* v. *Harper,* 3 N. H. 88.

It is immaterial whether the tenancy be one at will or for years; the action may be maintained and a recovery had according to the damage.

If the action is brought by the landlord or reversioner, who is out of possession, his specific interest in the property affected should be described. Not being in possession, his damages cannot be known, except by a correct description of his title and the injury received, and his interest in the property should be stated according to the facts. *Davis* v. *Jewett,* 13 N. H. 88; *Baker* v. *Saunderson,* 3 Pick. 348; 1 Chitty's Pl. 142; 2 ditto 378.

But where the plaintiff is in possession, in describing his right or interest in the property against a *wrong doer* for the recovery of damages and not the land itself, it is sufficient to state in the declaration that the plaintiff at the time of the injury was pos-

sessed of the land. His rights and interest are matters of evidence only. 1 Saund. on Pl. & Ev. 339; 2 Saund. 113, *a*, note 1; ditto 172, note 1; *Rider* v. *Smith*, 3 Term 766.

This plaintiff showed himself in possession of the premises described in the declaration, and that his possession was not dependent upon the will of the owners of the soil. As long as he kept the condition of the bond, so long was he entitled to the possession of the land, and no one could rightfully deprive him of the possession. He was, therefore, more than a mere tenant at will or lessee for years. He had in fact a freehold interest in the property; and although the fee in the land was not in him but in the town, yet his interest was of that character that might eventually ripen into a perfect title to the premises.

But the declaration alleges only that the plaintiff was " seized" of the land. It does not in terms allege possession. Were seizin possession merely, as is said in *Frost* v. *Cloutman*, 7 N. H. 9, 15, the plaintiff would need to show only possession as against a wrong doer; but it is believed that technically and more strictly speaking, a seizin of land is something more than a bare, naked possession; that it is the possession of at least a freehold. In either view, however, the declaration would be sufficient. The plaintiff had a possession, which was coupled with an interest in the premises, that was not limited to any specfic term, and a term not limited is a freehold.

The declaration then was sufficient to maintain the action, and the evidence was competent to sustain the declaration.

The deposition of Samuel George was rightly rejected. It was a deposition taken by the plaintiff, on notice and appearance by the defendants, but which had not been used, and which the plaintiff did not propose to use. But inasmuch as the witness had deceased, the defendants claimed the right to use the deposition on the trial.

To the general rule that the testimony of a deceased witness, given in a former action between the same parties, is competent in a subsequent action, there are few if any exceptions. 1 Greenl. Ev. 163; *Pike* v. *Crouch*, 1 Ld. Raymond 730; *Co-*

*ker* v. *Farwell*, 2 P. Williams 563; *Todd* v. *Earl of Win-chelsea*, 3 Car. & Payne 387; *Glass* v. *Beach*, 5 Vermont 172; *Jackson* v. *Bailey*, 2 Johns. 17; *Miles* v. *O'Hara*, 4 Binn. 108; *White* v. *Kiblin*, 11 Johns. 128; *Wilbur* v. *Selden*, 6 Cowen 162; *Crary* v. *Sprague*, 12 Wendell 41.

As a general rule the parties must be the same and the point in issue the same. Some of the authorities hold the rule with great strictness, and require that the precise language of the witness must be given, or the testimony will be rejected. With us it is sufficient if the person called to prove what the deceased witness said on a former trial, can state the whole substance. *Young* v. *Dearborn*, 2 Foster 372.

We have examined the authorities with considerable care, but we do not find any case where what a deceased witness has sworn to, has been admitted on the ground of his decease, unless his testimony has been *used* on the former trial or hearing. Depositions may be taken under statutes and rules of court, and may be used by the parties taking them, on showing a cause for the caption which is recognized by the court as sufficient. 1 Greenl. Ev., § 322.

By our statute, in addition to the general enactment upon this subject, we have a provision for taking depositions in perpetual remembrance, and both parties can avail themselves of it. Comp. Stat., chap. 200, § 24; ditto, chap. 201.

In this case the deposition of George was taken in the ordinary way by the plaintiff. It was never used, and technically the witness had not testified in the cause. He had given a deposition to *be* used, provided the party taking it saw fit to use it. But until it was used, it was a piece of evidence belonging to the plaintiff, which he had taken, and over which the defendants had no control. If they wished for the testimony of the witness they also could have taken his deposition, or could run their risk of his decease. We do not see how the question can be distinguished from the ordinary occurrence of taking depositions, and the party who takes them using them or not, as he may think proper.

The fact that a party has taken depositions in a cause does

not compel him to use them, any more than his summoning a witness compels him to call him upon the stand. He who takes the depositions uses them or not as he may please, and the other side has no right to them, nor will a court order them to be used or given up for the benefit of the other party.

There is another consideration. The witness may be interested against the party taking the deposition, and if the opposing party can use such a deposition, then he will obtain the benefit of testimony which he could not under the ordinary rules of evidence. *Crary* v. *Sprague*, 12 Wendell 41.

The greatest objection which we find to this verdict is its amount. From a description of the property injured, and of the injury itself, it would seem as though the jury must have given damages under a misapprehension of the law; and yet, the court in their instructions distinctly told them that " for the permanent injury to the soil, the town of Woodstock was *alone* entitled to recover." The language used by the court, that the " jury should give damages commensurate with the injury which the plaintiff had sustained in his estate," is the language of the books, and is strictly correct; still it might not at all times be fully comprehended by a jury, and would require explanation. This explanation the court attempted to give, and the jury were more than once told that the damages of a permanent character which happened to the land, belonged to the town, and they could immediately recover therefor.

As to the particular instructions requested to be given, " that the plaintiff could recover nothing more than the damages to the grass crop of that year, together with damages for the interruption of passage over the land," they were too limited. There might be other crops raised upon the land, or preparations made for the same, and his possession might be disturbed and injured in other ways than simply passing over the land.

The trial appears to have taken place four or five years after the injury was sustained, and the jury had a view of the premises. The case also states that their attention was called to the sand that had been washed upon the land. Where a view is had

by a jury, and consequently much less evidence is necessary, it is impossible for a court to determine what the real damages are ; and although the damages found by the jury in this case seem to us very large, yet we cannot say that the jury were not warranted, from the testimony on the trial, and from what they saw on the premises, in finding the amount which they did ; and we think there must be

*Judgment on the verdict.*