We think there was no error in the judgment of the supreme court.

Judgment affirmed.

BARRON *vs.* THE PEOPLE.

The deposition of a witness taken in a criminal case pursuant to the statute relating to certain offences committed in the city of New-York, (*Stat. of* 1844, *p.* 476, § 11,) may be read in evidence on the trial of the indictment, on proof that the witness is a non-resident of the city at the time of the trial, and was so when the deposition was taken.

Where, however, the only proof preliminary to reading the deposition was the evidence of a person employed by the district attorney to serve subpœnas, who testi-

Barron *v.* The People.

fied that a subpœna was issued to him for the witness whose deposition was offered to be read, that he called at two of the hotels in the city, where, as he was informed by the district attorney, the witness stopped when he was in the city, that he inquired of the bar-keepers at each of those places, and was informed that the witness was not at either of those places, and did not live in New-York to their knowledge, that he could not find the witness in the city, and did not know where he resided; *held* insufficient to authorize the deposition to be read.

ERROR to the supreme court. Barron was indicted in the New-York general sessions for grand larceny, committed in that city. The indictment was removed into the New-York oyer and terminer, and tried there. On the trial the district attorney offered to read in evidence against the defendant the deposition of James Whaley Bennett, purporting to have been taken *de bene esse* on the 27th of April, 1847, before the recorder of the city, pursuant to *Stat.* 1844, *p.* 476, § 11. The deposition was filed on the 30th of April—three days after it was taken. To authorize the reading the district attorney called Thomas W Brennan, who testified as follows: " I am one of the officers employed in the office of the district attorney of the city of New-York to serve subpœnas, and had a subpœna in this cause for James Whaley Bennett. I had a subpœna for Bennett to look for him, to look after him, to serve it on Bennett. I went to Rathbun's hotel and Lovejoy's hotel in this city, the places where I was informed by district attorney that Bennett stopped when he was in the city. I went to Lovejoy's and Rathbun's several times, at each time the cause was on the calendar since — · last. I inquired of the bar-keepers at each of those places foi Bennett, and was informed that he was not at either of those places, and did not live in New-York to their knowledge. I could not find Mr. Bennett in this city." On cross-examination the witness said, he did not know where Bennett resided.

The defendant's counsel objected to the reading of the deposition on several grounds; and among others, that it did not appear that Bennett was a non-resident of the state, or even of the city of New-York; and that the prosecution had not used due diligence to obtain the personal appearance of the witness— that they ought to have sent a subpœna for him to Chautauque county. It was stated in the deposition that the witness re-

sided in that county. The court overruled the objection, and the defendant excepted. The deposition was read, and the defendant was convicted, and sentenced to five years imprisonment in the state prison. On error brought the supreme court affirmed the judgment of the oyer and terminer. The defendant then brought error to this court.

*E. Sandford,* for the plaintiff in error

*John McKeon,* (district attorney,) for the people.

BRONSON, J. When certain offences are committed in the city and county of New-York, against persons being in, but not being residents of the city, the testimony of all witnesses in the matter, being in, but not residing in the city, may, on the appli cation of the district attorney, be taken *de bene esse,* before a judge, out of court. The witness must be examined in presence of the accused ; the examination must be reduced to writing, and filed in the office of the clerk of the court of sessions ; and may be used before the grand jury, and all courts and tribunals having jurisdiction of the subject matter, in the same manner and with the like effect as the witness could be were he personally present. (*Stat.* 1844, *p.* 476, § 11.) There is another statute touching this matter, but it does not affect the present question. (*Stat.* 1846, *p.* 408, § 9.) The testimony is to be taken "*de bene esse,*" or conditionally ; but upon what condition, or under what circumstances the deposition may be used, the legislature has not specified. Although the supreme court felt embarrassed in *The People* v. *Hadden,* (3 *Denio,* 220,) by the want of such a specification, they were clearly of opinion that the deposition could not be read in evidence under all possible circumstances, or as a matter of course ; but that the district attorney must give some account of the witness, or the reason why he was not produced, before the deposition could be received : and a new trial was ordered in that case, because the district attorney had been allowed to read the deposition, without sufficiently accounting for the absence of the witness.

There can be no doubt of the correctness of the decision. But I think the court might have gone a step further, and solved the question when, or under what circumstances, the deposition may be read in evidence. As the testimony is to be taken *de bene esse*, or conditionally, without any specification of the circumstances under which it may be used, the legislature mus⸱ have referred to the established practice of taking testimony *de bene esse*, or conditionally, in civil cases. Such deposition can only be given in evidence on showing that the witness is dead, insane, or unable to attend the trial in consequence of sickness or settled infirmity; or that he is absent from the state. (*The People* v. *Restell*, 3 *Hill*, 295, *and cases cited; 2 R. S.* 391, *art.* 1.) Unless we understand the legislature as referring to the practice in civil cases, the words "*de bene esse*," as they are used in the statute, will have no meaning. But with that reference, all is plain enough. The deposition cannot be read on the trial, without first showing that the attendance of the witness could not be procured, either in consequence of his inability to come, or his absence from the state.

It has not been contended, on the part of the people, that the deposition may be read under all possible circumstances. It is admitted that some account must be given of the witness. But it is said to be enough to show that the witness is a non-resident of the *city*, or cannot, upon diligent search, be found in it, at the time of the trial. That admission is enough to dispose of this case; for there was no proof whatever that the witness was a non-resident; and nothing like sufficient proof that he could not be found in the city. The deposition had not been read at the time this question arose; and Mr. Brennan knew nothing about the residence of the witness. He was only called for the purpose of showing that the witness could not be found in the city at the time of the trial; and there was a total failure to make out any thing like due diligence in the search and inquiry. It amounted to no more than this: Brennan, without knowing any thing himself about the witness or his residence, went to two hotels, where he was informed by the district attorney that Bennett stopped when he was in the city; and on

inquiry, he was informed by the two bar-keepers that Bennett "was not at either of those places, and did not live in New-York to their knowledge:" which means, I suppose, that they knew nothing about the matter, either one way or the other. The district attorney was not called to state what he knew about Bennett, or why he sent Brennan to the two hotels. Some stress was laid on the concluding remark of Brennan, that he "could not find Mr. Bennett in the city." But he had previously given the particulars of what he had done in the premises; and it was far enough from a diligent search or inquiry after the witness.

This is enough to dispose of the case as it now comes before us. But as the question which has already been made, will undoubtedly be made again upon the new trial which must be ordered, it is proper that we should determine what must be shown concerning the witness before the deposition can be read. That has already been intimated. It is not enough to prove that the witness is a non-resident of the *city*, or that upon diligent search and inquiry he cannot be found in it: nor will both of those facts combined make out a proper case. Absence from the city is not mentioned at all in the statute; and non-residence is only spoken of in reference to the class of persons who are injured by the offence, and the witnesses who may be examined out of court. When we come to the question, upon what condition, or under what circumstances the deposition may be read, the statute is entirely silent, except in the use of the words *de bene esse*. If we do not reject those words as utterly senseless, they evidently point to the rule in civil cases; and the witness must be produced on the trial, unless his attendance is prevented by insanity, sickness, settled infirmity or absence from the *state*. The legislature could not have intended to make a rule more burdensome to the accused in criminal cases, than is the rule in relation to a party in a civil suit. They did not intend that the deposition should be read wnen the witness resides at Brooklyn, in sight of the New-York city hall; and yet such is the result of the doctrine which has been urged on the part of the prosecution.

Barron *v.* The People.

If this question were more doubtful than it is, it should be borne in mind, that upon any construction, this is a statute in derogation of the common law rules of evidence; and that it violates a principle which was thought of sufficient importance to be adopted as a part of the sixth amendment of the constitution of the United States, and also forms a part of our bill of rights, in these words: "In all criminal prosecutions the accused has a right to be confronted with the witnesses against him." (1 *R. S.* 94, § 14.) This means something more than that the accused shall have the right to stand face to face with his accuser out of court; it means that they shall be confronted on the trial, so that the judge and jury may have the opportunity of observing the appearance and manner of the witness, as well as hearing what he has to say—the former sometimes proving a complete antidote to the latter, as is well known to every nisi prius lawyer. We cannot very well over-stimate the importance of having the witness examined and cross-examined in presence of the court and jury. Although the constitution of the United States does not apply to state prosecutions, and our bill of rights is but a statute, which, like other statutes, may be repealed, we ought to adopt the most strict construction for the purpose of confining any supposed repeal—especially one by mere implication—to the narrowest possible limits. Justice to the legislature requires that we should so construe the statute as not to carry the inroad which, to some extent, it makes upon a great principle, any further than is absolutely necessary.

I am of opinion that the rule which governs the reading of depositions taken conditionally in civil cases, should be applied to depositions taken under the New-York criminal statute. Upon this construction the statute will still have effect. It will apply wherever the witness, at the time of the trial, resides out of the state, or is dead; and where, though alive and residing in the state, he has become incapable of attending the trial in consequence of sickness or insanity.

But a majority of the judges are of opinion that though the witness may be a resident of the *state*, and able to attend the

trial, the deposition may be read on proof that he is a non-resident of the *city* at the time of the trial, and was so when the deposition was taken. We are all of opinion that there was no sufficient proof of such non-residence in this case; and on that ground the judgments of the supreme court and the oyer and terminer must be reversed, and a new trial be awarded.

Ordered accordingly.