# THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HENRY WILLIAMS, Appellant.

*Constitution — right of one accused of crime to be confronted with witnesses — meaning of the requirement — United States Constitution, art. 6, and art. 14, sec. 1 — Bill of rights, sec. 14 — Code of Criminal Procedure, sec. 8, sub. 3.*

Subdivision 3 of section 8 of the Code of Criminal Procedure provides that, in a criminal action, the defendant is entitled "to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a magistrate and the testimony reduced by him to the form of a deposition in the presence of the defendant, who has, either in person or by counsel, cross-examined, or had an opportunity to cross-examine, the witness, or where the testimony of a witness on the part of the people, who is unable to give security for his appearance, has been taken conditionally, according to sections two hundred and nineteen and two hundred and twenty, the deposition of the witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found in the State."

*Held*, that this enactment was constitutional and valid. (Brady, J., dissenting.)

That article 6 of the amendments to the United States Constitution, conferring upon the accused the right "to be confronted with the witnesses against him," did not apply to proceedings in State courts, but only to such as were instituted in the United States courts.

That even if the provisions of the first section of the fourteenth amendment to the United States Constitution operated to secure in State courts the protection, afforded by the Constitution to persons accused of crime in the United States courts by the provisions of the said sixth article of the amendments, still the said section of the Code of Criminal Procedure was not inconsistent therewith, as the right "to be confronted with the witnesses" did not require that the accused should in all cases be confronted with the witnesses upon the trial of the indictment; that it was sufficient if he had been once confronted with the witnesses against him in any stage of the process upon the same accusation, and had had an opportunity to cross-examine the witness either personally or by counsel.

That if the said section of the Code of Criminal Procedure should be held to be in conflict with the provisions of section 14 of the bill of rights of this State, then the said section of the Code, as being the latest expression of the legislative intent must prevail, and the section of the bill of rights must be deemed to have been thereby altered or repealed.

Appeal from a judgment of the New York Court of General Sessions, convicting the defendant of the crime of larceny in the first degree.

*William F. Kintzing* and *George L. Simonson*, for the appellant.

*John Vincent*, assistant district attorney, for the People.

DANIELS, J.:

The only point made in support of the appeal, is whether subdivision 3 of section 8 of the Code of Criminal Procedure, was constitutionally enacted by the legislature of the State. Upon the examination of the defendant before the committing magistrate, the deposition of Edward Smith was taken in the proceeding. It was subscribed by him and offered in evidence at the trial. The counsel for the defendant conceded that the formalties required by this subdivision had been complied with by the magistrate in taking the deposition, and the objection to its admissibility was placed exclusively upon the ground that this provision of the statute was not constitutionally enacted. It is to be inferred from what appears to have taken place upon the trial that the death, absence or inability of Smith to attend the trial had been legally accounted for, and that the deposition was admissible as evidence, if the legislature had the authority to provide for taking it and reading it in evidence, as that has been done by this section of the Code of Criminal Procedure.

In support of the objection, it has been claimed that this subdivision of section 8 conflicts with that part of article 6 of the amendments to the Constitution of the United States, which declares that in criminal prosecutions the accused should be confronted with the witnesses against him. But even the literal contruction of this article does not require that the accused should be so confronted upon the trial of the indictment itself, and when the effect of the same language has been considered by the courts, it has been held to be a compliance with what has in this manner been required, that at some stage in the progress of the criminal proceeding the accused should be confronted with the witnesses and afforded the opportunity for their cross-examination, and when he has been so confronted and that opportunity has been afforded to him, that the evidence may afterwards, under certain circumstances certainly, be read upon the trial of an indictment subsequently presented against him. The construction upon this subject has been generally stated to be, " if the witness was sworn before the examining magis-

trate, or before a coroner, and the accused had an opportunity then to cross-examine him, or if there were a former trial on which he was sworn, it seems allowable to make use of his deposition, or of the minutes of his examination, if the witness has since deceased, or is insane, or sick and unable to testify." (Cooley on Const. Limitations [3d ed.], 318.) And that the evidence of a deceased witness, in this manner taken either upon a preceding trial or before the committing magistrate, may be read upon the trial, has been sanctioned by the following authorities : *Crary* v. *Sprague* (12 Wend., 41 ; *People* v. *Newmann* (5 Hill, 295) ; *State* v. *Valentine* (7 Iredell [Law.], 225) ; *Summons* v. *State* (5 Ohio St., 325) ; *Brown* v. *Com.* (73 Penn., 321) ; *Com.* v. *Richards* (18 Pick., 437). And it has been further held not to be a violation of this language to receive in evidence the dying declarations of a witness where they appear to have been made under the circumstances required to attend them by the established rule of law. (*State* v. *Arnold*, 13 Iredell [Law], 184 ; *Robbins* v. *State*, 8 Ohio St., 131 ; *Shackelford* v. *State*, 33 Ark., 539.) It is manifest from the authorities permitting the deposition or evidence of a deceased witness to be read upon the trial of the accused, that it has not been deemed essential that he should be confronted by the witness against him upon the trial itself, but if the evidence be taken in the course of the proceeding in his presence, and with the right or privilege of cross-examination secured to him, that will be sufficient to allow the deposition to be read in case of the decease of the witness making it, between the time when it may be taken and the time of the trial. And if this article of the Constitution should be held to be applicable to the case, it would not, therefore, exclude the deposition received in evidence on the trial of the defendant.

But an equally, if not more conclusive, answer to the objection is that this article of the Constitution of the United States relates only to proceedings in the federal courts. It was not framed in such language as to be rendered applicable to proceedings in the State courts ; and with other articles amending the Constitution of the United States adopted at the same time, has been held to be inapplicable to proceedings in the courts of the States. (*Withers* v. *Buckley*, 20 How. [U. S.], 84, 90, 91 ; *Walker* v. *Sauvinet*, 92 U. S., 90 ; *United States* v. *Cruikshank*, Id., 542.) In the last case, in

considering the effect of the amendment prohibiting congress abridging the right of the people to assemble and to petition the government for a redress of grievances, it was said that "this, like the other amendments proposed and adopted at the same time, was not intended to limit the powers of the State governments in respect to their own citizens, but to operate upon the national government alone." (Id., 552.) And the same conclusion was followed in *Pearson* v. *Yewdall* (95 id., 294).

The Constitution of the State of New York was not made to embody the provision contained in this amendment to the federal Constitution, but it was included in what is known as the bill of rights of the citizens and inhabitants of this State. (1 R. S. [6th ed.], 375.) And section 14 is substantially identical with article 6 of the amendments to the Constitution of the United States. Its enactment evinced 'the understanding of the legislature to be that this amendment made to the federal Constitution was not applicable to the courts of the State, for if it had been it would not have been included within an act of the legislature, but that it was so included for the very obvious reason that this amendment to the Constitution of the United States was not applicable to proceedings in the courts of the State. The only restraint of this description imposed upon proceedings in the courts of the State is that contained in this section of the bill of rights. It derived its authority wholly from the power of the legislature, and like all other legislative acts could be amended, changed, restricted or enlarged at other sessions of the legislature. It was, in other words, completely within the legislative power and authority of the State. Accordingly, when it was proposed to revise and codify the laws relating to Criminal Procedure, this change was proposed by the commissioners. That appears by their report to the legislature made in 1849 and published in the following year. At that time the change which has since been made was proposed, as it is now contained in the Code of Criminal Procedure, and the reasons inducing the commissioners to propose the change were stated in their note to the section as they framed it. That section being section 12, is for all practical purposes the same as the present section 8 of the Code of Criminal Procedure. By this section the fourteenth section of the bill of rights was in substance re-enacted

" except that where the charge has been preliminarily examined before a magistrate, and the testimony reduced by him to the form of a deposition in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness." * * * "The deposition of the witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found in the State." This was a modification of so much of the bill of rights as secured to the accused the unqualified right to be confronted by the witnesses to be brought against him at the trial, even if it was to be so construed previously, and allowed that to be done in the early course of the proceeding, by complying with what the legislature directed in this manner, and that seems to have been as completely within the province of the legislature as the enactment of the original section was, which was inserted in the bill of rights.

Before this general change in the law of the State was made, the legislature had enacted a similar provision which was made applicable only to criminal proceedings in the city of New York. (Laws 1844, p. 476, chap. 315, § 11.) And it was to render that provision generally, instead of locally, applicable as it had been that this change was made by the Code of Criminal Procedure. And the authority of the legislature to enact the local law would seem to be equally as efficient for the enactment of the general law. This power as to the local law was considered in *Barrow* v. *People* (1 Comst., 386), and it was not deemed then to transcend in any manner the authority of the legislature over this subject, but the law on the contrary secured the approbation of the court, and if it could be so far sustained as it was so regarded, the general provision now contained in the statute is equally as capable of being supported. This subject was considered in *People* v. *Ah Chue* (57 Cal., 567), under a like provision contained in the Criminal Code of that State, and no doubt as to the power of the legislature to enact it was in any form intimated. The subject was in like manner considered in *Hurley* v. *State* (29 Ark., 17). The power of the legislature of this State for the enactment of this change has been subjected to no constitutional restraint whatever, but it properly appertained to the authority vested in the legislature by the constitution, and the exercise of the power has been sanctioned by the authorities to which reference

has been made. The sole objection therefore which was interposed to the reading of the deposition was not well founded. It was the duty of the court to receive it and submit it as it did for the consideration of the jury. And as the appeal depends wholly upon the authority of the legislature to make this change in the law, and that authority has been found to be ample for the purpose, the judgment in the case should be affirmed.

DAVIS, P. J. :

My brethren are in direct conflict upon the grave constitutional question involved in this case, and its importance seems to require a statement of the grounds upon which I give my concurrence to the conclusion of one of them.

It is error to suppose that the Constitution of the State of New York contains any express provision that in all criminal prosecutions the accused shall enjoy the right "to be confronted with the witnesses against him." That provision is contained in article 6 of the early amendments of the Constitution of the United States. It is well settled that that article had no application beyond the courts of the United States, and the trial of criminal prosecutions therein. (*Withers v. Buckley*, 20 How. [U. S.], 84; *Walker v. Sauvenet*, 92 U. S., 90; *United States v. Cruikshank*, Id., 542; *Pearson v. Yewdall*, 95 id., 294.)

But that provision of the federal Constitution was, by legislative enactment, made part of the bill of rights of this State, which in this particular adopted the exact language of the Constitution of the United States, and secured the right of an accused to be confronted with the witnesses against him in the courts of the State. The bill of rights has so long been the law of this State, and was so largely framed by the adoption of provisions of the Constitution of the United States not otherwise applicable to our courts, and by the enactment of several provisions of our State Constitution, that it is apt to be deemed a part of our Constitution which the legislature cannot contravene or change. But as is shown by my brother DANIELS, that supposition is not true. The legislature of the State has full power over the bill of rights as contained in the statutes, and may repeal or amend it by any enactment not in conflict with any provision of the State Constitution, or with the Constitution of the

United States as altered and extended by the later amendments. The portion of the section of the Code of Criminal Procedure now under consideration, is therefore not invalid because it conflicts (assuming that it does so) with a provision of the bill of rights; for it is in that case only the conflict of a later enactment of the legislature with a former one, and the effect is that the later must prevail as an amendment or modification or repeal of the former. The question in the case is squarely presented by substituting the section or subdivision of the Code for the section of the bill of rights, and inquiring whether the provision of the bill of rights as thus altered is in conflict, first, with the Constitution of the State; and second, with the Constitution of the United States. The first of these inquiries is answered by reference to section 6 of article 1 of the State Constitution, which will be found not to contain any provision requiring that the accused shall be confronted with the witnesses against him. That right was left by the framers of the State Constitution to statutory protection and regulation, and it was deemed amply protected by the section of the bill of rights above referred to; and it is now protected by section 8 of the Code of Criminal Procedure, which secures the right to an accused person to be confronted *at his trial* with the witnesses against him, except where he has once been so confronted and had opportunity for cross-examination, and the witness is dead, or by absence from the State is beyond the reach of the process of the court. The second inquiry: Is it void because in conflict with the Constitution of the United States, is not so easily answered. It is true that the original provision of the Constitution, contained in the sixth amendment, did not extend beyond the federal courts, and was no restraint upon the legislation of the State, or the action of its courts on the trials of accused persons in the State courts. But the question has assumed a new aspect under the operation of the fourteenth article of amendments to the Constitution, adopted July 28, 1868. Section 1 of those amendments is in these words:

" ARTICLE 14, SEC. 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

There can be no question but that this amendment extends to and operates *ex proprio vigore* upon the legislatures and courts of every State to enforce and secure all the privileges, immunities and rights within its scope and purpose. Upon every trial for crime in the courts of justice of the United States, and of every State, it steps in to interpose the shield of the Constitution to protect the privileges and immunities of every citizen, and the life, liberty and property of every person, against the forbidden violations; and all State statutes in conflict with it are annulled by its superior and universal authority. It is not, however, necessary to discuss whether, on trials of criminal accusations affecting the life, liberty or property of the accused, it goes so far as to secure in State courts what was already secured in federal courts, to wit, that the accused shall have the right " to be confronted with the witnesses," for if it does it cannot be held to confer a new meaning on that phrase although its established meaning may be extended to new cases. The right secured to the accused, it should be observed, is " to be confronted with the witnesses against him." This language does not require that the accused shall in all cases be so confronted with the witnesses upon the trial of the indictment. The courts have held, and doubtless correctly, that it is satisfied in cases of necessity if the accused have been once confronted with the witnesses against him in any stage of the process upon the same accusation, and has had the opportunities of examination by himself or on his behalf that such confronting was intended to secure.

My brother DANIELS has cited the numerous cases in which this has been held. If this were not the construction, the death of a witness might in all cases set a criminal free, although the deceased witness upon one trial had given his testimony while *confronted* with the accused, and been subjected to a rigorous cross-examination, for there could be no exceptions to the rigor of such a construction as is now insisted upon by the accused. If, however, there can be one exception based upon the necessities of justice, there can be others resting on the same reason. But there must be in all cases (assuming that the federal Constitution now applies)

an actual confronting before a competent tribunal or a hearing or trial of the same accusation with opportunity afforded to the accused to avail himself of all the benefits such confronting offers to him. Then upon showing that the exigency of necessity, as declared by the Code, exists, to wit, death or absence from the State, the right may arise to use the testimony taken when the confronting of the accused and the witness occurred. The subdivision of the eighth section of the Criminal Code does nothing more than codify and enact the substance of the rule established by the courts in construing the Constitution and the bill of rights. It embraces an exception growing out of the necessity that may arise by the inability to obtain the presence of the witness occasioned by his absence from the State; but that is justifiable on the same grounds that justify the exception based upon the death of the witness. The Code goes farther than the Constitution or bill of rights for it adds to the words "to be confronted with the witnesses against him" the words "on the trial," which of course made it necessary to define and declare the exceptions to the general rule thus created by the Code.

I am of opinion that the conclusion of my brother DANIELS is correct, and that the judgment should be affirmed.

BRADY, J. (dissenting):

The appellant was tried in the Court of General Sessions for larceny, convicted and sentenced to the State prison for the term of five years. The evidence upon which he was convicted was the affidavit of one Edward Smith, taken before the committing magistrate upon the appellant's arraignment before him and the testimony of officer Murphy. It is conceded that the evidence contained in the affidavit mentioned was necessary to warrant a conviction. It is also conceded that all the formalities required by subdivision 3 of section 8 of the Code of Criminal Procedure had been complied with. The single question is therefore presented whether that section is in violation of article 6 of the Constitution, and section 14 of the bill of rights of the State of New York. Both of these relate, it must be observed, not to a preliminary examination, but trial by an impartial jury, and declare that the accused shall be confronted with the witnesses against him. The section of the

Code mentioned provides, however, as follows: " In a a criminal action the defendant is entitled: 1. To a speedy and public trial. 2. To be allowed counsel as in civil actions, or he may appear and defend in person and with counsel; and 3. To produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a magistrate, and the testimony reduced by him to the form of a deposition in the presence of the defendant, who has, either in person or by counsel, cross-examined, or had an opportunity to cross-examine the witness, * * * the deposition of the witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or cannot, with due diligence, be found in the State."

It appears from the record that the deposition of Smith was made in the presence of the appellant and reduced to writing and signed by him, and further, the appellant was advised that he had the right to cross-examine Smith, but did not do so, replying only that he did not think it was right to hold him on Smith's statement. He denied the charge, however, but had no counsel. The affidavit was received under objection and exception, on proof that the affiant could not be found after due and diligent search. Was it properly admitted?

The preliminary examination is in no sense a trial by a jury and is not designed for that purpose. It is intended to protect the accused from further prosecution if the magistrate is satisfied that none should be had, thus enabling the accused to have a summary hearing before the magistrate and protecting him from a series of burdens which, if innocent, he would otherwise unnecessarily have to bear. It is not exalted in dignity because the right to cross-examine is given by the statute. This is not new in such examinations. The right to cross-examine has always existed. The fatal objection to the use of the deposition is that the accused is not confronted at the trial before the jury impanneled to try him with the witnesses, as required by the Constitution and bill of rights. He is confronted with him before the magistrate, who is really only setting the criminal machinery in motion, having no power to pronounce a judgment of which punishment may be predicated. This is not a compliance with the fundamental law and should not be

tolerated.  There are many reasons why it should be regarded as a dangerous procedure.  There are many cases in which the accused, upon such notice as his arrest gives, would, even if innocent, be entirely unprepared to ask any questions arising from many causes which might exist and which the imagination can readily supply.

The charge is made by a stranger, and having made it he departs and cannot be found.  He may be actuated by malice or mistaken as to the identy of the transgressor if a crime have been committed ; but his testimony is to be received if he cannot be found, and accepted as true without the test of a single element which distinguishes a trial from a mere preliminary examination, and this because the accused has been advised that he may have the privilege of cross-examination.  What privilege?  The cross-examination of a witness is an art which all lawyers do not possess, while with some it is a power which assists materially in the revelations of the truth and prevents the commission of great wrongs.  It is an ally of justice in its administration, and as important if not more important than any other element of jurisprudence.  This was well understood by the framers of the Constitution, and was, no doubt, one of the considerations which induced the protection guaranteed by the right to be confronted with the witness.

It is true that in some states, and it may be said now in this State, the evidence of a deceased witness on a former trial may be read on proof of his death.  (See *State* v. *Fitzgerald,* 19 N. W. Rep. [Iowa], 202 ; *Com.* v. *Richards,* 18 Pick., 434 ; *Sullivan* v. *State,* 6 Tex. Ap., 319 ; *State* v. *Hooker,* 17 Ver., 658 ; *Kean* v. *Com.,* 10 Bush., 190 ; *Walston* v. *Com.,* 16 B. Mon., 15 ; *Marler* v. *State,* 67 Ala., 55 ; *Roberts* v. *State,* 68 id., 515 ; *Brown* v. *Com.,* 73 Pa. St., 321.) But there a trial has been had and all the rights of such a proceeding secured.  The accused has been confronted with the witnesses and has had the opportunity to sift their evidence and assail them if he could do so.

True, also, it has been held in other States (see *Commonwealth* v. *Richards,* 18 Pick. [Mass.], 434 ; *State* v. *Fitzgerald,* 19 N. W. Rep., 202 [Iowa],) that evidence was received to show what a deceased witness stated on a preliminary examination, and although a constitutional barrier existed similar to ours.  The extent to which the authorities in this State have proceeded has only per-

mitted the evidence of a deceased witness upon a former trial of the same indictment to be used. (See *People* v. *Newman*, 5 Hill, 295; *Crary* v. *Sprague*, 12 Wend., 41.) And in the first of these cases it was expressly held that the public prosecutor could not use the testimony given by a witness on a former trial, though he be absent from the State. And it was suggested in that case that the rule which allowed the evidence of a deceased witness to be admitted in civil cases should not be applied to criminal proceedings, and the judgment in the case of *Finn* v. *The Commonwealth* (5 Rand., 701, 708) was approved, in which BROCK-ENBOUGH, J., said that even the death of the witness could not in a criminal case be allowed as a reason for receiving his former testimony. Reference was made in the *per curiam* opinion to the case of *Crary* v. *Sprague*, in which a different opinion was intimated. The court said it was not necessary to decide that point, however, because the case then in hand was one of mere absence from the territorial jurisdiction of the court. Justice NELSON said, in *Crary* v. *Sprague*, that the testimony of a witness could not be received unless he were dead and his death were affirmatively shown, and proceeded further to say : " Even diligent inquiry without being able to find the witness is not sufficient, though it is obvious there can scarcely be a shade of difference between the two cases (death and absence) either in principle or hardship."

It is true, as remarked by Justice NELSON, that there is scarcely a shade of difference between the principle upon which evidence of a deceased witness is admitted, and that of an absent witness whose presence cannot be secured by diligent search. But it is quite apparent that in allowing the evidence of a deceased witness upon a former trial, where the right of examination was secured and in the presence of the jury, the inroad upon the constitutional protection was carried as far as it should. be. It ought not to be extended to the evidence given upon a preliminary examination of a witness not dead, but not able to be found. The *People* v. *Newman* (*supra*) sustains this proposition and it should be preserved. There is a wide distinction between a preliminary proceeding and a trial, and the cases to which reference has been made form no precedent for the section under consideration. Its passage is regarded as having. been ill-advised and improvident, and its repudiation as a part of

the law of the State should be declared at once. It cannot be too soon done.

The judgment appealed from should for these reasons be reversed and a new trial ordered.

Judgment affirmed.

