COURT OF APPEALS,

February, 1914.

# THE PEOPLE v. JOHN A. QUALEY

(210 N. Y. 202.)

(1.) CONSTITUTIONAL LAW—CODE OF CRIMINAL LAW, SECTION 8—READ-ING DEPOSITION OF OFFICIAL STENOGRAPHER AT HEARING BEFORE MAGISTRATE.

The constitutionality of that portion of section 8 of the Code of Criminal Procedure which permits the reading of the deposition of a deceased person whose testimony has been taken in the presence of the defendant with an opportunity for cross-examination is not doubtful, and the evidence of a complainant certified by the official stenographer, who took stenographic minutes of her testimony at the hearings before the magistrate, and by the magistrate himself, is sufficiently authenticated within the requirements of section 221b of the Code of Criminal Procedure. (Laws 1912, ch. 390.)

(2.) SAME—WHEN STATUTORY CHANGE IN CRIMINAL PROCEDURE MADE AFTER COMMISSION OF A CRIME NOT VIOLATIVE OF THE EX POST FACTO CLAUSE OF THE FEDERAL CONSTITUTION.

The fact that section 221b, making a change in the statute by virtue of which the stenographer's minutes, when duly certified, were made competent in such cases, was enacted after the date of the commission of the offense for which defendant was on trial does not, as to him, violate the *ex post facto* clause of the Federal Constitution. He was fully protected in his rights since it was not a change in the substantive law, but merely in procedure affecting the mode of authenticating the testimony.

*People* v. *Qualey,* 157 App. Div. 916, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 20, 1913, which affirmed a judgment rendered at a Trial Term

for the county of New York upon a verdict convicting the defendant of the crime of grand larceny in the first degree.

The facts, so far as material, are stated in the opinion.

*Robert H. Elder* and *Amos H. Evans* for appellant. The court erred in receiving in evidence the testimony of the complaining witness given at the hearing before the magistrate. (People v. Fish, 125 N. Y. 136; People v. Williams, 35 Hun, 516; People v. Gilhooley, 108 App. Div. 236; People v. Dundon, 113 App. Div. 369; Foster v. Billoch, 12 Hun, 203; Zeraher v. Lehigh Coal Co., 187 Penn. St. 287; Muhler v. United States, 57 Fed. Rep. 390; Thomas v. Black, 84 Cal. 221; Turnpike Co. v. Ridley, 8 Vt. 404; Cummings v. State, 30 South Rep. 658; State v. Thompson, 41 South Rep. 107.)

*Charles S. Whitman, District Attorney* (*Robert S. Johnstone* and *Stanley L. Richter* of counsel), for respondent. The testimony of Mrs. Bull taken before the committing magistrate was properly received in evidence. (1 Wigmore on Ev. § 7; Hopt v. Utah, 110 U. S. 574; Thompson v. Missouri, .171 U. S. 380; People v. Vitusky, 155 App. Div. 139; Mattox v United States, 156 U. S. 237; People v. Williams, 35 Hun, 516; People v. Penhollow, 42 Hun, 103; People v. Fish, 125 N. Y. 136; People v. Elliott, 172 N. Y. 146; Jackson v. State, 81 Wis. 127; Comm. v. Richards, 18 Pick. 434; Summons v. State, 5 Ohio St. 325; Houser v. Comm., 51 Penn. St. 337; State v. McO'-Blenis, 24 Mo. 416; Johnson v. State, 1 Tex. App. 333.)

WILLARD BARTLETT, Ch. J.

There is only one question presented by this appeal which seems of sufficient importance to require discussion in an opinion.

The right of an accused person to be confronted with wit-

nesses against him is guaranteed by the Constitution of every state of the Union except California, Idaho, Michigan, Nevada, New Hampshire, North Carolina, North Dakota and New York. This statement is based upon an examination of the latest collection of American Constitutions available for reference in the New York State Library at Albany. In some of the states the right guaranteed to the accused is " to be confronted with the witnesses against him; " in others " to meet the witnesses against him face to face."

The Federal Constitution also provides that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him. (Constitution of the United States, Amendment VI.)

Although this portion of the Bill of Rights has thus been deemed important enough to be embodied in the fundamental law of the nation and the great majority of the states, it appears merely as a statutory enactment in the jurisprudence of New York. It is now to be found in section 8 of the Code of Criminal Procedure, which provides that in a criminal action the defendant is entitled to produce witnesses in his behalf and to be confronted with the witnesses against him in the presence of the court, " except that where the charge has been preliminarily examined before a magistrate, and the testimony reduced by him to the form of a deposition in the presence of the defendant, who has, either in person or by counsel, cross-examined, or had an opportunity to cross-examine the witness, * * * the deposition of the witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found in the state."

The indictment in the present case charged the defendant with having stolen $20,000 from Mrs. Mary N. Bull on the 23rd day of June, 1911. In July of that year the defendant was arrested, charged with the larceny, and an examination was

held before a city magistrate, who took the testimony of Mrs. Bull at several hearings in the presence of the defendant, whose counsel cross-examined her at considerable length. Mrs. Bull died before the trial of the defendant upon the indictment, and on the trial her deposition as taken before the magistrate was read in evidence as part of the People's case, over the objection and exception of the defendant. It is insisted upon the present appeal that the court erred in permitting Mrs. Bull's testimony thus to be read. Section 8 of the Code of Criminal Procedure is based in part upon a provision formerly contained in the Revised Statutes in these words: "In all criminal prosecutions the accused has a right to be confronted with the witnesses against him." (1 R. S. 94, § 14.) The import of this language was considered in this court in the case of *Barron* v. *People* (1 N. Y. 386, 391), where BRONSON, J., said: "This means something more than that the accused shall have the right to stand face to face with his accuser out of court; it means that they shall be confronted on the trial, so that the judge and jury may have the opportunity of observing the appearance and manner of the witness, as well as hearing what he has to say—the former sometimes proving a complete antidote to the latter, as is well known to every *nisi prius* lawyer. We cannot very well overestimate the importance of having the witness examined and cross-examined in presence of the court and jury." These considerations were deemed by the distinguished judge thus writing to be a conclusive argument in favor of a strict construction of any statute supposed to modify or repeal the right thus guaranteed.

The constitutionality, however, of that portion of section 8 of the Code of Criminal Procedure which permits the reading of the deposition of a deceased person whose testimony has been taken in the presence of the defendant with an opportunity for cross-examination, has been so distinctly and frequently affirmed

as to be no longer a matter of doubt. (People v. Williams, 35 Hun, 516; People v. Fish, 125 N. Y. 136, 149; 8 N. Y. Crim. 129.) The deposition of Mrs. Bull was certified by the official stenographer, who took stenographic minutes of her testimony at the hearings before the magistrate, and by the magistrate himself, and was thus sufficiently authenticated within the requirements of section 221b of the Code of Criminal Procedure (added by L. 1912, c. 390, taking effect April 15, 1912), which reads as follows:

" § 221b. Taking of examination, depositions and statements by official stenographer. Upon any examination provided for in this chapter, by or before any police justice or magistrate by whom an official stenographer shall have been appointed, under provision of law therefor, stenographic minutes of the proceedings and of the examination, depositions of witnesses and statement of the defendant, if any, shall be taken by such stenographer, and such minutes, when so taken and when certified by the stenographer and by the justice or magistrate who held such examination, shall be regarded as actually taken down in writing by said justice or magistrate and subscribed by the witness or witnesses at such examination and by the defendant, and as fully complying with the requirements of this chapter in reference to the taking and subscribing of such examination, depositions and statement."

This fact would dispose of the question under consideration were it not that the section just quoted was not enacted and did not take effect until after the time alleged in the indictment as that when the offense was committed. The learned counsel for the defendant argued that this made it an *ex post facto* law, and hence subject to the prohibition against the passage of any such law by any state contained in section 10 of article 1 of the Constitution of the United States. He argues that it takes away from the defendant a vested right which he had for nearly

two years prior to its passage—that is to say, the right in case any deposition was read in evidence against him under section 8 of the Code of Criminal Procedure to have it authenticated in the manner previously prescribed for the authentication of such depositions which differed from that prescribed in the amendment.

We deem this objection untenable. It is true that in some of the earlier cases in the Federal courts language was used in the endeavor to classify statutes which were *ex post facto* laws within the meaning of the Constitution, which would embrace legislation of the character embodied in section 221b of the Code of Criminal Procedure; but the more recent decisions on the subject in the Supreme Court of the United States show clearly that the amendment cannot be pronounced inoperative in the present case on that ground. It is necessary to refer to only two cases to demonstrate the correctness of this view.

The first of these is *Hopt* v. *Utah* (110 U. S. 574, 589). It was a writ of error to review a judgment of the Supreme Court of the territory of Utah condemning the defendant to suffer death for the crime of murder. At the time when the homicide was committed the law of the territory prohibited any persons against whom judgment had been rendered upon conviction for a felony from being witnesses in civil or criminal cases. After the date of the alleged homicide, but prior to the trial of the case, the territorial legislature repealed this prohibition against the competency of witnesses convicted of felony. It was contended that the repealing act was an *ex post facto* law because it permitted the crime charged to be established by witnesses whom the law made incompetent to testify in any case whatever at the time when the homicide occurred. The Supreme Court, however, refused to sustain that view, saying through Mr. Justice HARLAN, who wrote the opinion of the court: "Statutes which simply enlarge the class of

persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed."

The second case is *Thompson* v. *Missouri* (171 U. S. 380, 387). Thompson had been indicted for murder by poisoning and upon his trial it became material to ascertain the authorship of a certain prescription for strychnine and of a letter containing threatening language concerning his alleged victim. The accused denied that he wrote the prescription or the letter; but upon the trial letters written by him to his wife were admitted in evidence for the purpose of comparing them with the writing in the prescription and the letter in controversy. Upon an appeal to the Supreme Court of Missouri that tribunal reversed the judgment of death against Thompson and awarded him a new trial on the ground that it was error to receive in evidence for purposes of comparison the letters written by Thompson to his wife which otherwise had no relevancy to the issue. But subsequently the legislature of Missouri enacted a statute providing that the comparison of a disputed writing with another writing proved to the satisfaction of the judge to be genuine should be permitted to be made by witnesses and that such writings might be submitted to the court and jury as evidence of the authenticity of the writing in dispute. Upon the second trial of Thompson, which went up to the Supreme Court of the United States for review, the letters written by him to his wife were again admitted in evidence for the same purpose upon the authority of the statute which has

been mentioned; and in the Supreme Court it was contended in his behalf that as the letters to his wife were not at the time of the commission of the alleged offense admissible in evidence, a subsequent statute of Missouri changing this rule of evidence was *ex post facto* as applied to his case.

In the opinion of the court, again written by Mr. Justice HARLAN, it was conceded that the position of the accused found apparent support in the general language used in some opinions; but, after considering these opinions fully, and referring to the more recent *Hopt Case* (*supra*), the court adjudged that the Missouri statute relating to the comparison of writings was not *ex post facto* when applied to prosecutions for crimes committed prior to its passage. "We cannot perceive any ground," said the court, "upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offence was committed." The statute was to be regarded as one merely regulating procedure, and hence applicable to crimes committed prior to its passage.

The change effected by the enactment of section 221b of the Code of Criminal Procedure (taking effect April 15, 1912) was not a change in the substantive law, but merely a change in procedure. Subdivision 3 of section 8 of the same Code required that the testimony taken at the preliminary examination of the charge before the magistrate should be reduced by him to the form of a deposition in order to make it admissible in evidence in the event of the death, insanity or absence of the witness. Section 221b merely dispensed with the necessity that the testimony should be reduced to the form of a deposition and permitted the duly authenticated transcript of the minutes of the official stenographer to be used as evidence of what the tes-

timony was. We have here merely an alteration in the mode of authenticating the testimony. We cannot see that the accused could be held to have suffered any disadvantage by reason of the change; certainly not as much as the defendant sustained in the cases cited.

In the preservation of a fundamental right, regard is to be had to essentials irrespective of mere forms. If the legislature in New York is to permit, as it may, a departure from the principle that an accused person is entitled to be confronted with the witnesses against him on his trial, the point which it is important to safeguard is the reproduction of the testimony previously given before the magistrate in his presence, with the utmost accuracy obtainable by any practicable method in use among men. The experience of legislative bodies, of administrative boards, and of the courts, for many years, has demonstrated that stenographic minutes of oral transactions constitute the most accurate agency available for the reproduction of such transactions in writing or print. What was important to protect the interests of the defendant in the case at bar was to have Mrs. Bull's testimony read to the trial jury just as it was given before the magistrate. In no way could this end be attained so well as by reading the transcript of the minutes of the official stenographer; and this was done. If the reading of Mrs. Bull's deposition was to be permitted at all— and we have seen that the legislature had the constitutional power to permit her deposition to be read—under such circumstances, the defendant was fully protected in his right to have her words reproduced just as they were uttered. We think the procedure in this respect affords him no ground for complaint either as strict matter of law or otherwise.

The judgment of conviction should be affirmed.

WERNER, HISCOCK, CHASE, COLLIN and CUDDEBACK, JJ., concur.

Judgment of conviction affirmed.